Good morning everyone. We're delighted to be sitting here in Seattle. The cases will be called in the order listed on the docket. The first case on calendar for argument is Johnston v. Regal Entertainment Group. Counsel? I'm John Waldo for the Plaintiff's Appellant. Before we begin, your honors, when I can read your lips, and I'm close enough to do that, I should be able to understand everybody just fine. But I'm not always able to know when somebody's talking to me, if there's background noise going on, even when the background noise is the sound of my own voice. So if I'm not immediately responsive to a question, if you just gesture me and let me know that you're trying to ask a question, I will. Are you asking us politely not to interrupt you? I certainly wouldn't presume to go that far. No, you interrupt me all you want. It's just if I don't know that you're doing it. It's because I don't know, not because I don't care. Thank you, counsel. Thank you. May it please the court, this case asks us to resolve a tension, an arguable tension between two sources of law. On the one hand, we've got the Federal Americans with Disabilities Act, which as this court has said, unambiguously requires businesses like the movie theaters to offer effective communication to people with hearing loss. On the other hand, we've got regulations, really commentary to regulations, that suggest that maybe there are some exceptions to that rule. So who wins if you've got a statute on the one hand and you've got commentary to regulations on the other hand? It would seem pretty obvious to us that the statute ought to win. But that's not the answer we got at the district court. The district court basically said the ADA does not require people to provide different services, different products, citing an insurance policy case that dealt with the content of an insurance policy. Well, to coin a phrase that seems apt for this case, we've seen this movie before. Back in 2010, the court in the case of Arizona v. Harkins basically confronted precisely the same question. The district court there, like the district court here, had granted a 12B6 motion to the effect that the movie theaters did not have to provide any captioning at all for any movies because they didn't have to offer different services. The Ninth Circuit said, you've got that backwards. The AIDS Services Requirement in the Americans with Disabilities Act, that modifies the notion that you don't have to offer different services or products, not the other way around. So plainly, they did have to offer that for the movies, which they do. This case, of course, we're asking to extend that to the alternative content that they show under the umbrella of fathom event. So counsel, is it fair to say that the statute does not expressly address the circumstance where closed captioning is not part of the content that's provided to the theater? It's quite true that the statute does not explicitly address that issue, Your Honor. But I think the statute does explicitly give us rules by which the answer to that question can easily be deduced. I mean, the statute says that, first of all, movie theaters are explicitly places of public accommodation. Second, places of public accommodation have to offer auxiliary aids and services like captioning or some other effective method of making orally delivered information available to people with hearing loss. But counsel, in the case that you previously referred us to, the court had to interpret what was encompassed within the definition of services. That word itself did not convey that captioning was a service. So the court had to interpret that. Doesn't that mean that the statute is ambiguous such that it needs interpretation at some points? Well, perhaps, except in a way the court, this court, dealt with that earlier this year in the Robles v. Domino's pizza case, where it said explicitly, and I'm quoting, I'm only reading from the slip opinion on the court website because for some reason Wes hasn't picked this up yet. Page 17 of the slip opinion. It says, the statutory provisions at issue here requiring auxiliary aids and services and full and equal enjoyment are in the court. And in the footnote it cited a bunch of the cases that we cited in our brief for the auxiliary aids and services thing. Now, I think what the DOJ tried to do with the regulation that's at issue here was they tried to be very specific and provide detailed guidance about one very common situation. Namely, when movies are distributed with captions that have been provided by the studios, what do the theaters have to do? Believe it or not, that was an issue that required several years of litigation, notice and comment rulemaking, ultimate negotiations between the parties to even get that far. We have not actually addressed in any of those cases the question of what theaters might have to do under the statute otherwise. Now, the commentary to the regulation does indeed say on a number of occasions that this has to do with the regulations. I get that. Our argument is not that the rule requires it. Our argument is that the statute requires it. And we have to reconcile the apparent mandate from the statute with what the DOJ might have said in those regulations. Counsel, may I ask you, are you aware of a case that has extended the requirement that you are asking for? In other words, are you aware of a case that has compelled the theater to actually install captioning when no captioning is embedded in the showing? No, absolutely not, Your Honor. Not in movie theater. Live theaters do it all the time. I mean, they frequently have captioners there captioning the performance. Actually, the court held back in the Duval v. Kitsap County case that state courts have to provide captioning. I mean, the notion that places of public accommodation have to create, actually pay somebody else to create the captions and display them, this actually is very commonplace with every place of public accommodation except the movie theaters. So in a way, we're breaking new ground, but in a way, we're not. In a way, it's a very well-trod path. And the question is, why don't the theaters have to do the same thing everybody else does? Well, they say it's because of this regulation. I don't know that the regulation has to be interpreted that way. I think a lot of these qualifying statements in the commentary basically say, this is what the regulation does. It doesn't require this other stuff. We get that the regulation doesn't require it. We think the statute does. And that question has never been decided. It was in state cases. And it was certainly not part of the notice and comment rulemaking that came up. I mean, theoretically, yes, the Department of Justice could have teed up a notice and comment and said, we want to consider whether requiring the theaters to add captions to movies is an undue burden or a fundamental alteration. Then we could have actually sat down and had a conversation about the cost versus the benefits and so forth. Now, the difficulty is, is captioning easy to do or hard to do? We don't really know. We don't know why the captioning doesn't seem to work with the system by which Fathom distributes material to the theaters. I mean, to enable the movie studios to provide captions that could be worked on a number of different viewing devices, everybody kind of got together and came up with sort of an open source format where captioning could be added by essentially anybody to the movies and could be viewed on virtually any kind of device. We don't know why that can't be done for the Fathom content. If that's not possible, what about a phone app? What about just basically transcribing the script of the Fathom content, upload it to a website, let us use our phones in the theater to view it? There are lots of ways this can be done. Again, as Domino's says, we shouldn't worry too much right now about how we're going to do things because the real issue here is liability. There seems to be no question in anybody's mind that as presently configured, the Fathom content is not accessible to people with hearing loss. We think that can be done and should be done. Briefly on the state case, Your Honor, the statute and regulations say that places of public accommodation like movie theaters have to do what is reasonably possible in the circumstances. The district court said, well, you haven't shown us what's reasonably possible. She's right. I haven't because I don't know what's reasonably possible. That's why we need to do discovery. It's a fact question. Let's find out what can be done and let's do it if we can. But we need to remand it and develop a full factual record. I will save whatever time I have for rebuttal unless there are any other questions. All right. Thank you, counsel. Good morning. May it please the court. My name is Albert Flynn. I represent the movie theater operators. My friend, plaintiff's counsel, he referred a lot to the Harkins case. The Harkins case actually we think is virtually indistinguishable from this case. And if I may, I'll explain why. In Harkins, this court considered the requirement of open captioning, whether or not movie theaters had to provide open captioning. And it concluded that the ADA does. Yes, Your Honor. Educate me on the difference between open captioning and closed captioning. Yes, Your Honor. Open captioning, as I understand it, is actually what you might be more familiar with in the TV context, where the captioning actually appears on the screen. And so in a movie situation, the open captioning would appear on the screen of the movie theater, whereas closed captioning, closed movie captioning, is something that is accessible by a device that is available at the seat. So it's visible only to the person who's using the device. That's right, Your Honor. As opposed to everyone else who's in the theater. Yes, Your Honor. And that's how it's pleaded in their complaint. But if I may, to return to Harkins, what this court concluded in Harkins was that the ADA does not require Harkins to utilize open captioning as a matter of law. And it reached that conclusion by looking specifically to a statement in the preamble of the then-controlling version of the very same regulation we're talking about here, which is 28 CFR 36.303. And what it looked to is one statement. And in Harkins, this court said, the commentary plainly states that, quote, movie theaters are not required by 36.303, the rule, not the statute. It says, the commentary plainly states that movie theaters are not required by the rule to present open captioned films. That's what DOJ's previous commentary said. That's what this court looked to in Harkins. And then it said, entities such as Harkins should be able to rely on DOJ's commentary. And this court said, because the commentary to the rule states that open captions are not required by the rule, we conclude that open captioning is not mandated by the ADA as a matter of law. But a preliminary step to using the commentary and the DOJ regulation is a finding that the statute itself is ambiguous. Do you have a case that says the statute itself is ambiguous? Your Honor, what we have, and this is kind of the issue with Harkins as well, with respect to the panel that did that, I don't think they showed their work, so to speak, in terms of going through the Chevron steps and saying this is ambiguous, step one, and then step two. But this court has said in multiple cases that this regulation, 36.303, is entitled to deference because it fills a gap. And the Robles case that my friend referenced, Robles versus Domino's Pizza, says that 36.303 is flexible. And part of that is because auxiliary aids are only defined by example. In the statute, an auxiliary aid and services, there's some examples, but then it says and similar services. It's not exclusive. Your point is that using Justice Stevens' language in Chevron, the precise question is not dealt with by the statute. And therefore, we have to go to the expertise of the agency. That is correct, Your Honor. Under controlling Supreme Court precedent— As long as Chevron is controlling, we have to follow. That's correct, Your Honor. As long as Chevron is controlling— Some more reluctantly than others. Yes. And of course, we know that the correctness of Chevron has been hotly debated, but it is still controlling Supreme Court precedent. And this court and the Supreme Court in a case called Bragdon versus Abbott has said that the Department of Justice's regulations under Title III are entitled to deference. Title III itself expressly delegates to the 42 U.S.C. 12186, the authority to carry out the provisions of Title III. So I think if you were to conclude, Your Honor, to accept my friend's argument that the statute is clear, that the auxiliary aids and services provision can be applied, that there is no gap left to fill. That would require not only striking down 36.303G, which is the entirety of 36.303. Explain something to me. Crediting Mr. Waldo as being accurate that theaters have open captioning, why can't movie theaters have it? Well, Your Honor, with respect, I think there's a couple answers to that, and one of them is a practical question. But if I may turn to the legal question, I think there's this legal difference between a live theater that is in the business of not just presenting theater, presenting the show, but also in creating that content. Whereas movie theaters, as this Court said in the Fortune case, F-O-R-T-Y-U-N-E, the business of movie theaters is the screening of movies. And I think if you look at Harkins and footnote two in Harkins, and Judge Bail, this gets to your question about Chevron step two and the reasonableness of the regulation. In footnote two of Harkins, this Court looked at the statement in the preamble about how the rule does not require opening captioning, and it said, we believe that the Department of Justice could reasonably have concluded that open captioning would be a fundamental alteration of the business of showing movies. And I think the same conclusion can be reached here. And as your honors know, the second step of Chevron is just a question about reasonableness. It's not a question about what one particular judge might think is the correct interpretation. What one particular judge might think is the correct balancing between what's necessary and what might be a fundamental alteration. The question is whether the Department of Justice's conclusion is reasonable. And I think just as it was reasonable in Harkins, it is also reasonable here. And if it is reasonable here, the statement in the preamble, and there's multiple statements that say the rule does not require movie theaters to add captioning where the digital movie is not provided with captioning, I think that's controlling here. And I think if this Court were to go in a different direction, it would require distinguishing Harkins, which I just don't think can be done on its face. If I may turn briefly to the, oh, I did have one other point on the federal point. My friend mentioned, to sort of bolster his argument, that this wasn't raised in the notice and comment rulemaking, this issue about adding captions where they're not provided. And with respect, I disagree. I think if you look, if I can just find where I have it in my notes, at the 2014 NPRM, the notice of proposed rulemaking that led to the 2016 regulation that we're talking about here, DOJ said specifically, quote, in no case would movie theaters be required to create their own captioning or audio descriptions for movies. This rule would not prohibit movie theaters from screening movies that are not produced with captions or audio description. Were there any public responses to that? Yes, Your Honor. If you look in the preamble. What page of the record are you at? That is, it's not in the, because this is the 2014 notice of proposed rulemaking from the Federal Register. Oh, it's from the Federal Register. From the Federal Register. Do you have a citation to the Federal Register? I am looking to see if I have it in my notes, and I don't think I do, unfortunately. I just have the quote. So you were going to tell us what the public response was to that? Yes, Your Honor. And I'm sorry, the citation, though, for the 2014 NPRM is in the 2016 regulation. But if you also, Your Honor, to answer your specific question, if you look in the preamble that we've been discussing at page 87381 of the Federal Register, the Department of Justice notes, quote, commenters stressed, however, that movie theaters should in no way be prohibited or limited from exhibiting a movie that is not available with captioning or audio description or be required to add captioning or audio description when these features are not available. And the Department of Justice, as we've discussed in this, my friend does not contest, responded specifically to those comments repeatedly by providing the assurance that this rule does not require movie theaters to add captioning where captioning has not been provided. On the state law question, as I see my time is running out, we just have two points. The first is we think, actually, the easier route to affirming the district court is to affirm her decision that the plaintiffs did not satisfy the requirements of Twombly. There is only one paragraph in the complaint, paragraph 28, that addresses the question of reasonable possibility under the WLAD, and the allegation is simply that it is technically feasible to make captions available where captions have not been included. We don't think that meets the plausibility standard required under Twombly. There's actually a regulation under state law, the Washington Administrative Code 162-26-080, that actually sets forth requirements for possibility, reasonable, I'm sorry, for reasonableness, what makes something reasonably possible. And the plaintiff's complaint does not include any allegations that if accepted would satisfy that regulation. I see my time is expired. Counsel, I just wanted to ask you one other question. You said that that's the easiest way. What's the other way that you think the district court could be affirmed on the state law? Yes, Your Honor. The other way we think is following this Court's decision in Weyer, and not the part that my friend has referred to that Harkins distinguished, but in Weyer this Court said where there is not a lot of state authority, but there is a lot of federal authority, Washington courts have looked to federal courts and regulations interpreting the ADA to set forth what is required under state law. I think this is exactly that kind of situation. We recognize, as Mr. Waldo says, there's a spectrum. In some cases, federal law shouldn't be controlling. The state law can provide more protection. In some cases, federal law should give you sort of defining guidance as to what state law requires. We think we're on this end of the spectrum because there is no state law specifically addressing this particular issue, but on the federal side, we have a regulation that went through six years of notice and comment and is very detailed. All right. Thank you, counsel. Thank you, Your Honor. Rebuttal. Thank you. Very quickly, getting back to the Harkins case. Saying that open captaining is not required is a completely different thing from saying nothing is required. The free auxiliary aid and service needs to be provided. It said, but closed captaining was one that could be provided. I mean, it's different to say you don't have to do it this way. That's far different from saying you don't have to do it at all if there is some way to do it, and we think that's the case here. The Hunsaker case versus Contra Costa County said, here's what regulations can do. They can add to, they can amplify, they can particularize the requirements of a statute, but they may not eliminate the requirements. 36303 did indeed particularize the requirements. It added performance criteria. It added number of devices. It talked about the need for notice. It specified how the theaters deal with that. It did not say, and Hunsaker doesn't permit it to say, you can simply say, under certain circumstances, the theaters don't have to do anything. They have not cited, I have not found a single case ever in which a court has said a place of public accommodation does not have to provide auxiliary aids and services in any circumstance. Thank you. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Nguyen